

# THE ATTORNEY GENERAL
# OF TEXAS

### AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

July 10, 1948

Hon. Geo. B. Butler                     Opinion No. V-630
Chairman
Board of Insurance Commissioners        Re: The sufficiency of the sub-
Austin, Texas                               mitted amendment to the
                                            charter of the Praetorians
                                            to effect an extension of its
                                            corporate existence.

Dear Sir:

          Your request for the opinion of this Department is as fol-
lows:

          "Enclosed you will please see Original Charter of
     Modern Order of Praetorians which shows by endorsement
     that it was filed in the Department of State April 1, 1898 and
     by provision No. 4 that 'the term for which said corporation
     shall exist shall be Fifty years from the date of its incorpo-
     ration'.

          "Following the enactment of what is now Chapter 8,
     Title 78 of the Revised Statutes the Modern Order of Prae-
     torians qualified thereunder and has operated under its pro-
     visions continuously.

          "The directors have submitted to this Department the
     enclosed original instrument which has been styled 'Amend-
     ment Extension and Renewal of Praetorian Charter'. You
     will observe that it purports to be the action of the Board of
     Directors and is duly executed by such directors.

          "Will you please advise me whether the enclosure last
     above described is sufficient to renew the charter of the
     Praetorian for the Fifty year period following April 1, 1948.
     If your answer is in the affirmative, will you please return
     the enclosure with your usual certificate of approval so as
     to permit it to be filed here.

          "If your answer is in the negative, will you please ad-
     vise me whether the extension of the charter is controlled
     by the provision of Vernon's Article 1315c and if your advice
     is in the affirmative, will you please advise me whether it is
     necessary to require the resolution therein referred to to be

adopted at a regular or special meeting of the entire membership of the Praetorians or whether the expression of the membership may be obtained by resolution from the respective local lodges or from the supreme governing body, which is called the Supreme Senate."

The Modern Order of Praetorians was first incorporated on April 1, 1898, as a benevolent society under the provisions of Art. 713, Ch. 11, Title XXI, R.S. 1895, which is as follows:

"RELIGIOUS, CHARITABLE AND OTHER CORPORATIONS
                                                        Article
"Powers and privileges of................................713

"Article 713.(637) Any religious society, military or fire company, literary, social, charitable or benevolent association, other than colleges, universities, academies or seminaries, or any grand or subordinate lodge, or other order of free and accepted masons, or of the independent order of odd fellows, may, by the consent of a majority of its members, become bodies corporate under this title, electing directors or trustees, and performing such things as are directed in the case of other corporations; and, when so organized, shall have all the powers and privileges and be subject to all the restrictions in this title contained, for the objects named in the charter, and shall have the same power to make by-laws for the regulation of their affairs as other corporations. Such directors or trustees shall not usurp or exercise the functions of the officers in charge of the spiritual affairs of any society."

Article 713, as amended by the Acts of 1899, page 236, is now Article 1396, R.C.S. 1925.

In 1899, the 26th Legislature enacted S.B. 166, page 235, amending Art. 713, as the same is now found in the Revised Statutes, and adding thereto Art. 713a, which has been carried forward into the Revised Civil Statutes of 1925 as Articles 1398, 1399, 1400, 1401, 1402, 1403, 1404, 1405, 1406, and 1407.

At the time of incorporation, its purpose clause was as follows:

"2. The purposes of said corporation shall be: Benevolent: to relieve the necessities of the members thereof; to promote fraternity and social intercourse; to succor and assist members in time of sickness, death or destitution; the relief of orphans and widows of deceased members; and to levy assessments upon the members thereof for the pur-

pose of providing mutual indemnity in case of accident,
sickness or death.

"This Incorporation is not for profit, but for the mu-
tual aid of the members thereof; and funds collected from
such assessments shall be devoted exclusively to the pay-
ment of indemnity in the case of sickness or death of, or
accident to, the members thereof.

"The expenses of said Corporation shall be met from
assessments levied for that purpose, which in no case
shall be greater than may be necessary to meet such ex-
penses economically administered.

"Believing that the highest civic wisdom is contained
in the expressed policy of the fathers of the common-wealth
of Texas to foster and protect its citizens in the acquisition
of homes, this Corporation shall also offer to its members
the means of acquiring homes by mutual aid and co-opera-
tion, and shall ___ authority to levy monthly assessments
upon such of its members as shall desire to avail themselves
of this aid, the funds so accumulated to be advanced to its
members for the purpose of acquiring, building, or paying
for homes. Members to whom such advances shall be made
shall continue the payment of their assessments and legal
interest upon amounts so advanced until by easy installments
an investment fund shall be created by which the same shall
be returned. Such advances to members shall be secured by
liens in favor of this corporation, for the benefit of its mem-
bers, executed in compliance with law. The expenses of this
home benefit department shall be provided for by deducting a
fixed sum from monthly assessments collected, which shall
in no case exceed the necessary requirements of the corpora-
tion economically administered. For this purpose only, said
corporation shall have authority to accumulate and loan money
to its members, and to erect or repair any building or im-
provement, and to accumulate and loan money for this pur-
pose."

This purpose clause was modified insofar as the indemnity
insurance feature was concerned by the provisions of Art. 3096, Chap.
3, Title LVIII, R.S. 1895, which is as follows:

"Art. 3096. Nothing in this title shall be construed to
affect or in any way apply to mutual relief associations or-
ganized and chartered under the general incorporation laws
of Texas, or which are organized under the laws of any
other state, which have no capital stock, and whose relief
funds are created and sustained by assessments made upon

the members of said associations in accordance with their several by-laws and regulations; provided, that the principal officer of every such benevolent organization (not conducted by lodges a quorum of whose members meet in their respective lodge rooms at least once each month), shall be required to make an annual statement under oath to the department of agriculture, insurance, statistics and history on the first day of January of each year, or within sixty days thereafter, showing--

"1. Name of organization and where located.
"2. Name and residence of officers..
"3. The salary paid each officer.
"4. The gross amount of money received during the year, and from what sources.
"5. The amount paid to policy holders on assessments to pay losses.
"6. The amount paid out for all other purposes, stating in detail what purpose.
"7. Surplus in the treasury, if any.
"And should any such benevolent organization refuse or neglect to make an annual report as above required, it shall be deemed an insurance company conducted for profit to its officers, and amenable to the laws governing such companies."

Chapter 8, Title 78, R.C.S. of Texas, 1925, dealing with fraternal benefit societies was originally enacted as Acts 1913, page 220, and places under the jurisdiction of the Board of Insurance Commissioners the business of insurance by fraternal benefit societies as defined therein. The Board of Insurance Commissioners is given jurisdiction over these societies which were incorporated under its provisions and is given jurisdiction over any society which was incorporated prior to the passage of the fraternal benefit act but which engaged in the business of writing fraternal benefit insurance policies by the provisions of Art. 4839, which is as follows:

"Art. 4839. Powers retained--amendments

"Any society now engaged in transacting business in this State may exercise all of the rights conferred hereby, and all of the rights, powers and privileges now exercised or possessed by it under its charter or articles of incorporation not inconsistent with this chapter, if incorporated; or if it be a voluntary association, it may incorporate hereunder. But no society already organized shall be required to reincorporate hereunder, and any such society may amend its articles of incorporation from time to time in the manner provided therein or in its Constitution and laws, and all such amendments shall be filed with the Commissioner (Footnote: Transfer of Commissioner's powers and duties to Board of

Insurance Commissioners, see art. 4682a, ante.) and
shall become operative upon such filing, unless a later
time be provided in such amendments or in its articles
of incorporation, Constitution or laws. Acts 1913, p. 220."

The question therefore arises as to whether or not the orig-
inal charter of the Modern Order of Praetorians, filed April 1, 1898, as
a benevolent association was ever changed so that the Modern Order of
Praetorians became a fraternal benefit society under the provisions of
Chapter 8.

The sole power given to the Directors or Supreme Senators
as contained in the articles of incorporation, dated March 31, 1898, is
as follows:

"The Directors or Supreme Senators, of this Cor-
poration are authorized to arrange for the adoption of by-
laws for the government thereof, and to provide for any
alterations, changes or amendments thereto which may be
from time to time necessary to carry out the ends of this
incorporation."

Article 4839 provides that "any such society may amend its
articles of incorporation from time to time in the manner provided
therein or in its Constitution and laws." If any valid amendments were
made under the provisions of Chapter 8, such amendments must be
made by virtue of the above caluse or by virtue of the Constitution and
by-laws adopted by the society. The above clause only gives authority
for the Supreme Senators or Directors, which terms seem to be synon-
ymous, to arrange for the adoption of by-laws and to provide for any
alterations, changes or amendments in the by-laws.

The Constitution which had been adopted by the Modern Or-
der of Praetorians and which was in force June 10, 1923, provides in
Art. XXV, the subject being "Amendments to This Constitution," as
follows:

"Sec. 1. The Constitution of this Order may be amend-
ed at any session of the Supreme Senate by a majority vote
of all Supreme Senators present and voting on a resolution
setting forth the amendment sought to be made, and which
has been published in the immediately previous issue of
the official organ of this Order.

"Sec. 2. Upon a petition of not less than 10 per cent
of the members in good standing, provided that the peti-
tion from each Council petitioning is signed by a majority
of its members in good standing, setting forth the part to
be amended, the Executive Committee may order a vote

to be taken by all Councils in good standing, and shall
cause such proposed amendments to be published in the
official organ thirty days before such vote is to be taken,
and if the amendments so submitted shall receive the ap-
proval of three-fourths of all the members present in
good standing in their respective Councils, as reported
to the Executive Committee by the several Recorders,
the same shall be declared adopted.

"Sec. 3. The Executive Committee shall have power
to make and adopt by-laws not in conflict with this Consti-
tution, as may be advisable in carrying out the objects and
interests of this Order.

"Sec. 4. All amendments to this Constitution shall be
in force and take effect thirty days after the adoption there-
of."

By reference to Sec. 1 it will be noted that the Constitution
can be amended by a majority vote of all Supreme Senators under the
circumstances set forth therein. The Supreme Senate and its powers
are set forth under Art. V, including the methods of meeting. The
Board of Advisors created under Art. XI, and under Sec. 3 of said
Article, "shall between the meetings of the Supreme Senate, exercise
all its powers, except to change and modify or repeal this Constitu-
tion." The Executive Committee created under Art. XII has no author-
ity to do anything concerning the Constitution, but it may under Sec. 3
of Art. XXXV make and adopt by-laws not in conflict with the Consti-
tution. The Directors or Trustees created by Art. XII of the Consti-
tution seem to have no powers except to convey or encumber real es-
tate belonging to the corporation by a vote of 2/3 of the Directors. It
is provided further that the home office of the Order shall not be con-
veyed or encumbered except by authority of the Supreme Senate.

From a resume of the Constitution and by-laws in effect
on May 11, 1927, it would seem that no one except the Supreme Senate
had the power to alter, amend, or repeal the provisions of the Consti-
tution then in force.

It appears that a charter amendment, a copy of which is at-
tached to the brief of The Praetorians in the file, was filed with the
Commissioner of Insurance on June 14, 1927. It also appears from
the records of the Secretary of State that the corporation attempted to
file this charter amendment with the Secretary of State, Mrs. Jane Y.
McCallum, prior to that date, but that she refused to accept it on the
ground that the Secretary of State had no authority to file an amend-
ment to the charter of a fraternal insurance society, since that was
purely under the jurisdiction of the Board of Insurance Commission-
ers. Thereafter, it was sent to the Board of Insurance Commission-
ers and filed as above stated. No other amendments have ever been

filed in the office of the Secretary of State.

In analyzing this proposed amendment it is necessary to look to the basis of the amendment, which is set forth as follows:

"BE IT KNOWN that at a regular meeting of the Supreme Senate of the Modern Order of Praetorians, in quadrennial session asembled, held at Dallas, Texas, on the 11th day of May, A.D. 1927, the following resolution was duly passed and adopted:

'RESOLVED that Article I, Section 1 of the Constitution of said Order be amended to read as follows:

"This organization shall be known as The Praetorians, Its principal office shall be in the City of Dallas, State of Texas."'

"I, John W. Payne, Secretary of The Praetorians, do hereby certify that the foregoing is a true copy of the minutes of the meeting of said Supreme Senate of said Order held on May 11th, A.D. 1927.

"WITNESS my hand and the seal of said corporation this the 18th day of May, A.D. 1927.

"-s- Jno. W. Payne
Secretary

"Sworn to and subscribed before me this 24th day of May, A.D. 1927.

"-s- George Lintner
Notary Public
Dallas County, Texas."

From the foregoing it is readily apparent that the only amendment or change in the Constitution which was authorized by the body authorized to make such amendment or change was to change the first section of Art. I of the Constitution, so that the name of the society should become "The Praetorians" instead of "Modern Order of Praetorians."

However, a reference to the amended charter shows that after reciting the meeting of the Supreme Senate as above set forth, the Directors mentioned in Art. XIII, who are the same as the Board of Advisors, which latter, as stated above, has no authority to change, modify, or repeal the Constitution, then proceeded not only to change

the name but to change the purpose clause of the corporation from that of a benevolent association to that of a fraternal benefit society under the provisions of Chapter 8, Title 78.

Therefore, insofar as the charter amendment filed in 1927 with the Board of Insurance Commissioners attempted to change anything in the charter except the name of the society, it was absolutely null and void since such change was not authorized either according to its Constitution or by-laws or by virtue of any statutory authorities, the directors of the Modern Order of Praetorians as such having no power either express or implied to change the purpose clause of the corporation.

Since the amendment of 1927 was not legally effective, except to change the name of the corporation from "The Modern Order of Praetorians" to "The Praetorians," and did not otherwise change the articles of incorporation or the charter or the purposes for which such corporation was originally chartered, namely, as a benevolent association with the rights and privileges enumerated in its articles of incorporation, it is still a benevolent association incorporated under the provisions of Art. 1396, R.C.S. 1925, and not under the provisions of Chapter 8, Title 78, R.C. S. 1925.

The foregoing factual situation is identical, save for the corporate names, with the factual situation set forth in Opinion No. 0-4160 by the Hon. Gerald C. Mann, Attorney General, addressed to Hon. W. J. Lawson, Secretary of State, and approved March 14, 1942, a copy of which is attached. In that opinion it was held that the amendment filed by the corporation extending its period of existence, having been filed with the Board of Insurance Commissioners who had no legal authority to receive and file the amendment for the purpose of extending the corporate life of the corporation, such filing was nugatory and did not comply with the general laws for extending its corporate existence as a charitable or benevolent association.

This Department expressly approves the reasoning contained in Opinion 0-4160, and therefore holds that the "Amendment Extension and Renewal of Praetorian Charter" forwarded with your request is not sufficient to renew the charter of the Praetorians for the fifty-year period following April 1, 1948.

Your second question is restated as follows:

"If your answer is in the negative, will you please advise me whether the extension of the charter is controlled by the provision of Vernon's Art. 1315c and if your advise is in the affirmative, will you please advise me whether it is necessary to require the resolution therein referred to to be adopted at a regular or special meeting of the entire membership of the Praetorians or whether the expression

of the membership may be obtained by resolution from
the respective local lodges or from the supreme gover-
ning body, which is called the Supreme Senate."

The charter of the Praetorians expired by virtue of its terms
on April 1, 1948, and the only legal method whereby the corporation may
be revived and its corporate existence may be revived and extended is
under the provisions of Article 1315, R.C.S. which is as follows:

"Corporations created for the support of benevolent,
charitable, educational or missionary undertakings, the
support of any literary or scientific undertaking, the main-
tenance of a library, or the promotion of painting, music
or other fine arts, whose charter has expired by limitation,
may revive such charter with all the privileges and immun-
ities and rights of property, real and personal, exercised
and held by it at the date of the expiration of its said char-
ter, by viling, with the consent of a majority of its stock-
holders, a new charter under the provisions of this chap-
ter, reciting therein such original privileges and immuni-
ties and rights of property, and by filing therewith a cer-
tified copy of such original expired charter. Acts 1874,
p. 120; G.L. vol. 8, p. 122; Acts 1883, p. 98; G.L. vol. 9,
p. 404; Acts 1907, p. 301; Acts 1909, p. 226; P.D. 5942."

That this is the proper method of reviving the charter of
such a corporation is in accordance with the rule of law laid down by
the Supreme Court in the case of Flowers v. Pecos River Ry. Co.,
156 S.W. 260. Article 1315c would be inapplicable since it applies only
to corporations chartered under the general law. However, if the cor-
porate existence of the Praetorians is revived under the provisions of
Art. 1315, a copy of such amendment should be furnished to the Board
of Insurance Commissioners as provided in Art. 4839, R.C.S. 1925.

## SUMMARY

A benevolent society chartered in 1898 under the
provisions of Art. 1396, R.C.S. 1925 and whose charter
has expired by expiration of law may be revived only
under the provisions of Art. 1315, R.C.S. 1925, although
such corporation was engaged in the business of issuing
fraternal benefit insurance policies under the provisions
of Art. 4839, R.C.S. 1925. The attempted filing with the
Board of Insurance Commissioners of a charter amend-
ment extending the life of the corporation under the pro-
visions of Ch. 8, Title 78, R.C.S. 1925, prior to the ex-
piration of its charter by operation of law, was without

legal effect to extend the life of the corporation. Flowers v. Pecos River Ry. Co., 156 S.W. 260;;Opinion No. 0-4160 to Hon. W. J. Lawson, Secretary of State, March 14, 1942.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By                                             
C. K. Richards
Assistant

CKR/JCP
ENCL.

APPROVED

ATTORNEY GENERAL